**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **ADRIENNE SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 4:18-CV-1302-SNLJ** |
| ) | |
| **ANDREW M. SAUL**[1]**,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Adrienne

Smith's application for Disability Insurance Benefits under Titles II and XVI of the

Social Security Act. Plaintiff now seeks judicial review (#14). The Commissioner

opposes the motion (#19), and the issue is ripe.

**I.       Procedural History**

Plaintiff Smith was born in 1982, reported two years of college education, and

alleges that her disability began February 2, 2015. Plaintiff's application was denied at

the initial determination level. She then appeared before an Administrative Law Judge

("ALJ"), who found that plaintiff had severe impairments that included degenerative

cervical disc disease, obesity, a major depressive disorder, and an anxiety disorder.

---

[1] After this case was filed, Saul was confirmed as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

However, the ALJ found that those impairments did not meet or equal a listed impairment.

The ALJ then determined that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she cannot climb ladders, ropes, or scaffolds, and cannot crawl. She is limited to occasionally climbing ramps or stairs, as well as balancing, stooping, kneeling, and crouching. She can frequently reach, handle, finger, and feel, and can perform simple, routine, and repetitive tasks. The ALJ found that plaintiff's impairments would not preclude her from performing work that exists in significant numbers in the national economy, including sedentary and unskilled work as an optical goods assembler and circuit board touch-up worker. Consequently, the ALJ found that plaintiff was not disabled.

On June 5, 2018, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Thus, plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.

## II.    Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III.    The ALJ's Decision

At Step One, the ALJ found Smith met the insured status requirements through the relevant period, and she had not engaged in substantial gainful activity since February 2, 2015. At Step Two, the ALJ found Smith suffers from four severe impairments: (1) degenerative cervical disc disease, (2) obesity; (3) major depressive disorder; and (4) anxiety disorder. The ALJ stated that he did <u>not</u> believe plaintiff had a pinched nerve, fibromyalgia, chronic pain syndrome, impaired shoulders, lupus, anxiety attacks, or a somatoform or conversion disorder because the objective medical record was devoid of evidence that would corroborate their existence.

At Step Three, the ALJ concluded Smith does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations.

Next, in Step Four, the ALJ determined Smith's RFC.[2] As noted, the ALJ found that Smith

> has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except the claimant cannot climb ladders, ropes, or scaffolds and cannot crawl, and the claimant is limited to occasionally climbing ramps or stairs, as well as balancing, stooping, kneeling, and crouching. The claimant can frequently reach, handle, finger and feel, and she can perform simple, routine and repetitive tasks. This constitutes a limited range of unskilled sedentary work.

(Tr. 15). As part of this determination, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause symptoms. However, the ALJ also found that her allegations about her physical symptoms' intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. The ALJ reviewed plaintiff's medical records from the relevant period, which reflected that although plaintiff's complaints were severe, clinical findings were normal or near normal. The ALJ noted that no physician had imposed restrictions on her, let alone opined that plaintiff is disabled. Further, the ALJ noted she "has been

---

[2] In the past, there has been some confusion as to when the RFC is determined, which affects who holds the burden of proof in establishing an appropriate RFC. In this Circuit, it has been held that "the RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (*quoting Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000)); *see also Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014) ("Steps 4 and 5 require the ALJ to determine a claimant's RFC[.]").

inconsistent in her reports to treating sources about her symptoms, or vague in her description of symptoms to them, and this though she asserts that symptoms are constant." In addition, "the claimant's description of the severity of pain has been so extreme as to appear implausible, all the more so when she did not appear ot be in pain at the hearing."

Based on this RFC determination, the ALJ determined Smith cannot perform any past relevant work.

At Step Five, the ALJ analyzed whether Smith can successfully adjust to other work. The ALJ noted that if Smith had the RFC to perform the full range of sedentary work, then the medical-vocational rules would direct a finding that plaintiff is not disabled. However, it appeared that additional limitations impede Smith's ability to perform all or substantially all of the sedentary work requirements. For that reason, the ALJ relied on vocational expert ("VE") testimony to determine the extent to which these limitations erode Smith's occupational base to perform sedentary work. The VE testified Smith is able to perform work as an optical goods assembler and circuit board touch-up worker. The ALJ then found these jobs exist in significant numbers in the national economy and concluded Smith is not disabled. (Tr. 28-29).

## IV.     **Standard of Review**

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*,

240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V. Discussion

Plaintiff's sole argument is that the ALJ erred by failing to consider her somatoform or conversion disorder as a severe impairment. "Conversion disorder is a phenomenon in which a person actually and subjectively experiences symptoms without a known underlying medical cause." *Nowling v. Colvin*, 813 F.3d 1110, 1113-14 (8th Cir. 2016). Those symptoms result from "an unconscious, involuntary conversion of mental stress into a physiological symptom." *Id.* at 1114. Someone with this diagnosis "actually believes herself to be experiencing symptoms at a greater level of severity than clinical evidence can support." *Id.* As stated above, the ALJ stated that he did not believe plaintiff had a pinched nerve, fibromyalgia, chronic pain syndrome, impaired

shoulders, lupus, anxiety attacks, or a somatoform or conversion disorder.  Plaintiff raises

only the matter of the somatoform or conversion disorder on appeal.

The ALJ stated as follows:

> an April 2016 report from a treating physician shows that the doctor
> thought the claimant may have a conversion disorder, and an October 2016
> report from an emergency room physician shows that the doctor was of the
> impression the claimant had a conversion disorder… However, Dr. Onuma,
> who specializes in mental disorders and who treated the claimant during
> throughout [sic] most of 2016, never diagnosed the claimant with a
> conversion disorder, perhaps because his evaluations consistently showed
> that she had normal psychomotor activity.

(Tr. 13.)  Plaintiff states that her attorney repeatedly requested that the record be

expanded through a psychiatric consultative examination, but the ALJ instead ordered

only an orthopedic examination.

Plaintiff saw a psychiatrist six times in 2016 for treatment of anxiety, depression,

and post-traumatic stress disorder.  That psychiatrist did not diagnose plaintiff with

conversion disorder.  However, her treating physician wrote in April 2016 "cannot r/o

neurological versus musculoskeletal versus conversion disorder until pt is evaluated by

neurology and neurosurgery" and "I am growing increasingly concerned pt is

psychosocially eliciting [symptoms]."  The neurology consultation revealed that

plaintiff's impairments were not related to any cervical or lumbar pathology and

conservative care was recommended.  The record does not include her primary care

physician's conclusions following that consultation.  However, in October 2016, an

emergency room doctor wrote "conversion disorder (or hysterical neurosis, conversion

type)" among his clinical impressions. That doctor's notes show that he consulted with an

neurologist who concurred with the ER doctor's diagnosis and recommended a psychiatric evaluation.

The Court is mindful that in "cases involving somatoform disorder...an ALJ is not free to reject subjective experiences without an express finding that the claimant's testimony is not credible." *Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995). Where such a finding of noncredibility has been made, "[w]e will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints ... even in cases involving somatoform disorder." *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). In this case, it is notable that the ALJ did not appear to make an express credibility determination. To the extent the ALJ addressed this matter by pointing out, for example, that the plaintiff did not appear to be in extreme pain at the hearing, and that she apparently did not use her wheelchair in her home, the record also reflects that plaintiff did not need to use her wheelchair every day.

Plaintiff further argues that the ALJ's failure to properly develop the record was error. "There is no bright line indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008). The ALJ explained, however, that he denied the requests to order a psychiatric consultative examination because the evaluation "would very likely be futile." First, as already explained, the plaintiff's treating psychiatrist discerned no somatoform or conversion disorder. Second, any such diagnosis by a consultative evaluator would be suspect because a one-time evaluator could not be reasonably expected to have more insight than plaintiff's treating

expert. Third, any such diagnosis would also be suspect because the plaintiff was not forthright during another consultative physical examination.[3] The Court observes, however, that nothing prevented the ALJ from ordering that plaintiff's treating psychiatrist be consulted about the possibility of a somatoform or conversion disorder. Ultimately, it is troubling to this Court that the ALJ had at least one diagnosis of conversion disorder for plaintiff, yet the ALJ denied the possibility of such a disorder because, essentially, the question of such a disorder was never put to her treating psychiatrist. Again, that psychiatrist was treating plaintiff for anxiety, depression, and PTSD. The ALJ merely assumed that the psychiatrist would have looked for other diagnoses when the record does not reflect that plaintiff presented the psychiatrist with all her physical systems. The Court holds that the ALJ's decision not to develop the record on this point was prejudicial. The ALJ impermissibly substituted his own judgment for the judgments of plaintiff's treating physicians. *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009). His determination that plaintiff did not have a somatoform or conversion disorder was not supported by substantial evidence.

The Court will therefore reverse and remand for further development of the record on plaintiff's somatoform or conversion disorder and calculation of a new RFC if necessary. *See, e.g.*, *Lomax v. Colvin*, 4:12CV1275 TCM, 2013 WL 5442776, at *18 (E.D. Mo. Sept. 30, 2013) (reversing and remanding the ALJ's determination of no disability where the ALJ did not discuss plaintiff's diagnosis of somatization).

---

[3] The consultative orthopedic surgeon's exam was incomplete because the plaintiff could not or would not perform certain activities. She could not remove any clothing due to "generalized pain," and she would not stand up from her wheelchair.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED and REMANDED**. A separate judgment will accompany this Order.

Dated this 30th day of August, 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE